My name is Timothy Wickmer, and I represent the petitioner Myra Goswell-Renner. Your Honors, we appreciate the opportunity to argue before you today. It seems that this case is ready-made to fill the gap in Eighth Circuit precedent law between the decisions of Gumana and Hunminoo, which I think fittingly we have two judges from both of those cases here today. We contest the decision of the BIA, obviously, and we would ask that you vacate it and either grant my client withholding of removal under the appropriate law, which is a mandatory form of relief, or else send it back to the BIA and the agency with appropriate instructions that they consider on the merits asylum, withholding, or cancellation of removal. In short, there were two errors at the BIA. Number one, they treated petitioner's asylum case and withholding case as a derivative case regarding to the fear of her children against female genital mutilation, FGM. Isn't that exactly the way the case was presented to the BIA? The case was presented to the BIA, I think, in terms of an alternative. There were facts that were stipulated where there was indications of the petitioner's fear, as well as the fear that she expressed on behalf of her children, and also the record evidence, in addition to merely the petitioner's testimony, strongly suggests that it is more likely than not that females in the Gambia will be subject to FGM. No, I think the question is, wasn't it presented to the Board as a derivative claim? It was also presented to the Board as a derivative claim, yes. Where was it presented to the Board as a direct claim of persecution against the applicant? Can you point to where in the brief we should look to say that that claim was properly presented? Yes, Your Honor, it is a good question. We did not represent the petitioner in the proceedings below. No, I'm not saying you did, but you have the brief, you have the record, and you're now representing him here, so you have to show how this claim was presented. Yes, Your Honor, and the only thing I can point to in the record are the facts as a whole. Oh, I see. So you're just saying there were facts there that could have supported an argument that you're making now, but they didn't make the legal argument. The legal argument was implicit at the BIA level, and when the BIA issued its decision, that was properly brought up before the Court today. Also, an exhaustion requirement is not required in the case of Hormel v. Halvering. That's a U.S. Supreme Court case from 1947 where there would be manifest injustice, and in this case, you had a pro se petitioner at the immigration judge level, and she did testify. But not before the BIA, though. I'm sorry, I misspoke, Your Honor. She was not pro se before the IJ. She was pro se in front of the Immigration Service on the cancellation claim. I wonder if we could retract that. But at the Board, she had a lawyer from St. Louis, right? She did. She did, yes. Yes, the facts that were presented to the Board support the notion that the harm is directly to her, and this has been recognized in the Sixth Circuit, as Judge Grimger acknowledged in the Gamana case, although he noted it had been criticized, and it was also noted in the Huynh-Minhu case, the Seventh Circuit. And in this case, manifest injustice would result if the court did not consider this claim as a claim of direct harm. Any parent who sees the mutilation and torture of her children would obviously suffer harm. The situation in the Gambia is not like the situation in Huynh-Minhu where the court declined to consider this motion, because unlike the case, in that case it was in Benin, where the statistics show that FGM was about 17% to 50% of the population. The female population underwent this procedure. The procedure is too clinical. It's horrific persecution. And the standard for withholding is more likely than not, which if you ballpark, that would be 51%, 50.1%. But in the case of at the bar today, my client, number one, had a cousin who suffered FGM. There's an affidavit in the record at page 280. There's an affidavit from that cousin's doctor at 282. Neither of these were discussed in the holding by the IJ or in the holding by the BIA, and that's an important procedural error that did her harm, which also violates the Due Process Clause, resulting in a removal error that may well have been decided otherwise. That, so you have a 70% likelihood in the Gambia of female genital mutilation. You have actual harm to family members from there, plus you have the testimony of her sister, which indicated that the protection that they had in their village was because of the presence of a group of local nuns, and the local nuns largely are not there anymore. Obviously, the dearth of vocations to the religious life is something that the court can take general notice of almost. But there are facts which distinguish it from Hunmanu so that you could say that there is a more likely than not probability, and thus you can reach the legal issue of the case. The other distinguishing factor from Hunmanu is that in that case, when you were talking about the clear probability standard, there was a U.S. citizen or permanent resident parent who could have kept the children here in the United States if there were removal. In this case, there is no such luxury. The petitioner is facing removal, and her husband does not have the status to keep them here. Neither parent would be able to stay legally in the United States, and the children, U.S. citizen children, two of whom are daughters, would be forced to go back to the Gambia and face at least 70% likelihood of female genital mutilation. I don't think that there's really any serious doubt as to the more likely than not. Your Honors raised the issue of whether this argument had been brought up before the BIA, and we submit that just a review of the record as a whole indicates this. The asking of the BIA to reconsider matter of AK, I think, is also at least an implicit argument, Judge Colleton, because in matter of AK, that itself allowed for the possibility that it could be considered a direct harm, but there weren't facts in AK to establish that. I do have that citation in my brief, which I intend to cite exactly in rebuttal, in my rebuttal time, so I will address that. Counsel, is there any issue as to the timeliness of the request for asylum? There is. We contested that both before the IJ and the BIA. We are aware that the Eighth Circuit does not allow a review of that, but should the case be remanded, we did want to preserve that issue for remand because the Board could consider it on remand. But under current Eighth Circuit precedent, that is foreclosed from review. We do argue that she had extraordinary circumstances and a good reason to file late. Your Honor, also in this case is the notion that her cancellation of removal case, which provides for relief for a person who has been here more than ten years, who can show an exceptional and extremely unusual hardship to her U.S. citizen children, was pre-termitted. It wasn't even considered on the merits, and this was based upon an error of law and fact. So you can review this de novo as to the question of law and materiality and relevance. And also it fails the substantial evidence standard in that the IJ found that she had false testimony under oath at her adjustment of status interview when she, due to the separation from her husband, indicated that she was not married. And the reason why it's an error as a matter of law is because at the time of the interview, she wasn't eligible for adjustment of status based upon the petition already being pre-termitted. That petition automatically revokes when she marries after the petition is filed, but before her mother became a U.S. citizen. So in that sense, it wasn't even possible for her to adjust. There shouldn't have been an interview scheduled. And even though that. But does that matter if what occurred during the time of her seeking relief in that way, she actually does make the inappropriate or, in fact, wrong statement to the officials, I'm not married? Right. I was just referring to the matter of law, but Cungus versus U.S. talks about the fact that false statement has to be made with a subjective intent to wrongly obtain a benefit. There is evidence in the record, we argue, which establishes that that wasn't met. But even if it were. So what you're saying is it wasn't possible to get what she wanted, but the desire to obtain it was the motive for the dishonesty. The desire, she clearly desired to get permanent residence, but she was unaware that her marital status had any influence on that outcome. The petition itself was invalid. It was legally impossible for her to get the benefit. And as a result, even assuming she made a knowingly false statement, a statement has to be material. A statement has to be relevant. And if the statement in this case was over an impossibility, we're not saying, Your Honor, that it would have made it right to do or moral or anything like that. We're just saying that even if you took the dimmest view of her testimony, it was over an immaterial fact. Why was it impossible? Because the way the immigration law works, there are certain categories of preference based upon what your relationship is in the family thing. It's a whole law school, of course, but in a nutshell, she went from unmarried daughter of a permanent resident, which is in one category, and then that will port to a different category automatically if the petitioner becomes a U.S. citizen before the beneficiary marries. When she married, by operation of law, that petition was dead. It didn't exist. But if they believed her that she was not married, her statement that she was not married, they could have mistakenly given her. And that's exactly what happened. They did believe her and they did mistakenly grant it. But I'm just speaking to the issue of law is that it was an impossibility. There was no visa to be obtained. So there couldn't have been a material false statement to obtain a benefit. There was no benefit to obtain. That is an argument that was made at the lower level. And, again, I believe that the petitioner, she had just had a child. She had had symptoms of postpartum depression. She had gone through a separation from her husband, which lasted almost 10 months. There were extenuating factors, which I believe makes the circumstance more understandable. At that interview, that's where she was pro se, and she didn't have the benefit of counsel. Any lawyer could have let her know, you can't even file this. It's obvious. And then later, if you want to look at her motivation, she's the one who told them all about her family relationships when she tried to get citizenship. It never would have been discovered by the government if the petitioner hadn't come forward. So it's a mixed error of, under the substantial evidence factor, her subjective intent under Congress versus U.S., and also I think it's important to note that it was an impossibility, and thus it's an error of law as well. Because the application for cancellation was pre-terminated by the judge, it was a violation of due process. She wasn't even allowed to present it on the merits. Who knows what other, you know, there could have been testimony taken with regard to that specific fact. There could have been briefing done on that issue, and that wasn't done. I'm into my rebuttal time, and as I promised Judge Colleton, I would find that aside from a matter of decay. I would reserve the rest of my time if there are no further questions. Thank you, Mr. Whitmer. Mr. O'Connor. Thank you, Your Honors. Good morning. May it please the Court. I am Blair O'Connor on behalf of the Attorney General. The two issues before the Court both have to do with the petitioner's eligibility and whether she satisfied her burden of proof of establishing her statutory eligibility for two forms of relief. With respect to cancellation of removal, petitioner's false testimony to a CIS officer that she was single and had never been married served to cut off a line of inquiry  and, as such, it was false testimony that precluded her from establishing good moral character for cancellation of removal. Counsel for the appellant says even assuming it was false, it doesn't matter because she couldn't have gotten what she was seeking. What's your response? Well, again, I would say that goes to her intent because, obviously, she thought that she could get it. Otherwise, why would she even go to the interview? I mean, if she firmly believed that it was impossible, there was no point of going to the interview. She went to that interview to get adjustment of status, and she knew from the approval notice that was on her mother's visa petition that her category, which is stated on the notice, was unmarried adult daughter of a lawful permanent resident. So her claim that she thought that her marital status was irrelevant is simply not plausible. She knew that was the visa category she had received. What if she thought it was relevant, but he says it was mistaken? She was mistaken, that it's not relevant. That's what I hear the argument this morning. Was her marital status relevant to this adjustment or not? Of course. As to whether or not that person is going to grant her adjustment of status, it's highly relevant because if she was married, as he pointed out, there was no other visa preference category to port to because married adult sons and daughters of lawful permanent residents are not eligible for visas. So once she married in 1999, that visa was automatically revoked by operation of law. But the only way for CIS to know this is for the applicants to be truthful when they interview them at their eligibility interview. And the CIS officer testified that he asked her point blank, had you ever been married, and she said no. He then wrote in his own handwriting on the adjustment application, states never married, and she never disputes that. She claims she doesn't recall being asked the question, but she never directly denies that, no, there's no way he asked me that. And so by telling that CIS officer that she had never been married, she cut off that line of inquiry that was highly and directly relevant to her eligibility for that form of relief. And we would note that, again, her argument that she was separated from her husband and she was confused, again, it's just simply not plausible. She's fluent in English. She's college educated. She has the approval notice when the mom's visa is granted, noting that her category is unmarried adult daughter of a lawful permanent resident. The only reason for her to lie about her marital status is to give the impression that things are exactly the same when mom's visa was approved. I'm still unmarried daughter now of a citizen, not a lawful permanent resident. I mean, she's never answered the question that if she thought the marriage was irrelevant, then why lie about it? Why not tell the truth? And she's never answered that. It's just not a plausible explanation, Your Honors. So that was false testimony under oath to a CIS officer where there's a statutory ineligibility to establish a code of moral character for cancellation of removal. Now, with respect to her claim for withholding removal, the government does argue, as it did in its brief, that this issue was not exhausted. The only claim that was appealed in the brief to the board was a derivative claim. If you look at the record, which is pages 43 to 45, that headnote is set out as that the circuit law on derivative claims is unsettled. It noted that this court and Gumina had ruled against that claim, but it noted decisions from other circuits that seemed to suggest that it would allow such claims, and basically that entire argument was asking the board to revisit its decision in a matter of AK. At no point in that brief to the board did she make a claim that, no, it's really a direct claim due to psychological harms from witnessing my daughter's being subjected to FGM. Therefore, that claim is not exhausted. I will say I'm not familiar with the Supreme Court case that opposing counsel cited, but it's not an immigration case. It doesn't directly deal with the statute here, which is 8 U.S.C. 1252 D.1. And this court has held that that is a mandatory jurisdictional statute. It cannot be waived. And therefore, if the claim is not exhausted to the board, this court is precluded from considering it. But even assuming arguendo without conceding that it was exhausted, as this court did in Humana, it need not address this issue of whether or not psychological harms to an alien parent from a U.S. citizen daughter being subjected to FGM is by itself sufficient. And the reason it does not need to get there is because the board and immigration judge both found that the claim that the daughters would be subjected to FGM was speculative. Although the I.J. noted she gave full credit to the State Department reports, that's a 70% practice rate of FGM in Gambia, she noted that the petitioner, all of her sisters, and her mother themselves were never subjected to FGM while they were there. Both petitioner and her husband were adamantly opposed to FGM, and the claim of the threat was from unidentified distant relatives. And that last point separates this case from all the other decisions where they have allowed claims on either psychological harm or derivative. Because like in both Gamana and Humana, the aliens presented direct testimony of relatives who indicated a desire to subject the children to FGM, whether it be uncles, aunts, grandmothers, in this case we don't have any of that. We do have an affidavit from a cousin who was subjected to FGM, but that affidavit says nothing about the petitioner's daughters, U.S. citizen daughters, being subjected to them if they were brought to the Gambia. And furthermore, there's no reason why the petitioner would have to return to the town where these distant relatives live. As the State Department reports note, two of the nine tribes did not practice FGM. Petitioner and her husband, should they return, could return to an area in Gambia where the distant relatives wouldn't even know that they were back. I mean, she has no relations with these people. When asked on testimony if there was anyone other than her grandmother, any relatives who lived there, she only referenced a single aunt, and she said she was not close to. There's no reason they have to go back to where these relatives would live to know that the daughters were there. Furthermore, as other courts have noted, we are talking about U.S. citizen children. Although the husband is not in proceedings at the moment. He doesn't have lawful status, but he is not in proceedings. And the petitioner, both of her parents, the kid's grandparents, and several aunts and uncles are U.S. citizens living in the United States. Does the record show the ages of the children? They were born in, I believe, 2008. So they would be about five or six. But there are several relatives who live in the United States who potentially could take care of the kids if FGM was a legitimate threat to these girls should they return to the Gambia. We would also note that the only circuit other than the six in the Bay which directly addressed psychological harms to an alien parent from their children being subjected to FGM was the Fourth Circuit in nine versus Gonzales, and there they rejected that claim. They said that psychological harms alone to a parent are not sufficient to rise the level of persecution to satisfy a direct persecution claim itself. Furthermore, the Bay Circuit and the unpublished board decisions that a Bay noted and petitioner relies on from the board, all those circuits relied heavily on the en banc decision by the board in matter of CYG. And that decision has since been overruled. The attorney general has said that that's within the family planning context, but they said that spouses are no longer per se eligible for asylum because their wife was subjected to a forced sterilization or forced abortion. So therefore, today it is questionable whether or not the Sixth Circuit would still come out the same way, given that we have CYG overruled and we now have the precedential decision from the board in matter of AK that squarely rejects a derivative asylum claim. It's questionable whether or not a Bay would still be a good law if it were reconsidered by the Sixth Circuit today. So barring any further questions from the court, we would say that because the evidence in this case fails to compel the conclusion that petitioner satisfied her burden of proof of eligibility for either cancellation of removal or withholding of removal, the petition for review should be denied. Now, the false statement issue, does that go to whether she's removable in the first place or does that just go to whether cancellation is warranted? She was found removable on that basis, Your Honor. They have not briefed that because she's independently removable for not having a valid entry document. And so her movability is established in any event. The issue is not exhaustive. We would say the court should not reach it. It basically goes to the— Yes, Your Honor. I see. One would be withholding, the other would be cancellation. Yes, Your Honor. And she bears the burden of proof for both of those. What's the other ground you said for removability? It's 1182A7, which is not having a valid entry document at the time you adjust status. And again, because she was not eligible to adjust status at that point, she would have to have a valid document showing that she is in lawful status. Because her student visa had expired, she had no valid entry document. And she's conceded that ground of removability, Your Honor. Okay, thank you. And also we would note as a last point that she does have her parents and brothers and sisters who are U.S. citizens. The fraud ground of removability is waivable. So potentially she could try to adjust status if she were to get a waiver on that ground in the future. But the issues before this court, I mean, her eligibility for cancellation and withholding are foreclosed, and she's failed to establish her burden. But in the future, she could potentially seek adjustment of status again. Thank you, Your Honors. Thank you, Mr. O'Connor. Mr. Whitmer. Thank you. I was glad to hear Mr. O'Connor cite 43 to 45 in the appendix because that's exactly where I point to as well. It does seem that prior counsel did maintain this claim of direct harm to the petitioner. And clearly the heading says derivative claim. But as we know from statutory construction, a heading doesn't control. But rather he cites a bae, which is the Sixth Circuit case, which says that the female genital mutilation to a daughter can be direct harm to the petitioner. I mean, it's right on point. He cites a bae. The issue has been exhausted at the lower level. And in this, on page 45 specifically, it talks about, pray the board reissue the issue of harm to family members not at risk and the derivative harm associated with effects upon those emotional, psychological, or witnessing harm to one's children. Though he says derivative, let's recall what's precluded from review. The derivative claim based upon the fear of the child is how Judge Grinder phrased that in Gumana. Not just derivative in the sense of it's harm to someone very close to me whom I love. That's my direct claim for social group. But the derivative thing, what is derivative that's precluded is based on the fear of the child. And here, prior counsel did specifically cite a bae and talk about the petitioner being the one who suffers the harm. It's at least enough of a raising for the court to reach it here under the light of the circumstances of the case where six-year-old girls are facing mutilation and the mother having to endure it. With regard to the affidavit of the cousin not mentioning whether the daughters would suffer female genital mutilation, why would it? The purpose of the affidavit was to show that the cousin had suffered it. The purpose of the affidavit was not to give an expert opinion on whether the daughters would suffer female genital mutilation. The record's already replete with evidence that they would. And Judge Colleton, your argument or your question about is it just cancellation or is it removal, and Mr. O'Connor's answer, it is relevant. We haven't contested removability because there's an alternative ground of removability, but that issue of fraud is important if you're thinking of a due process angle and whether there's a protectable interest because though, as Mr. O'Connor says, there may be a waiver for fraud, it does impose an additional ground of inadmissibility that is lifelong. If she were to be removed based upon failure to have documents, she could come back in. There's no special waiver for that. There are other waivers that may be required. But fraud, fraudulent testimony, may I finish my? Finish your sentence. So the fraud ground is an additional ground of inadmissibility. So there is in that sense an additional bar to her return should even such a thing be possible, and thus it would still fall within the purview of due process clause reviewability, which we have sought the court to address. Thank you, Mr. Whitman. Thank you very much. The court wishes to thank both counsel for your argument and the briefing which you've submitted. We'll take the case under advisement and render a decision in due course. Thank you. Madam Clerk, would you call case number four?